KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
E-mail: karen@hankslg.com
CHANTEL M. SCHIMMING, ESQ.
Nevada Bar No. 8886
E-mail: chantel@hankslg.com
HANKS LAW GROUP
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
Telephone: (702) 758-8434
*Attorneys for SFR Investments Pool 1, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SFR INVESTMENTS POOL 1, LLC,<br><br>Plaintiff,<br>vs.<br><br>NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING; DOES I through X; and ROE BUSINESS ENTITIES I through X, inclusive,<br><br>Defendants. | Case No. 2:22-cv-00192-JAD-BNW<br><br>**SFR INVESTMENTS POOL 1, LLC'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

SFR INVESTMENTS POOL 1, LLC ("SFR") moves on an emergency basis for a temporary restraining order and preliminary injunction ("Motion") against NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"):

> to enjoin Shellpoint, and its successors, assigns and agents from continuing foreclosure proceedings on real property located at **2993 Via Della Amore, Henderson, NV 89052, Parcel No. 177-36-411-030** (the "Property"), including, but not limited to, advertising for sale the Property, and enjoining any attempts to enter the Property or disturbing the tenants.

This Emergency Motion is based on FRCP 65, Local Rule 7-4, the papers and pleadings on file herein, the following points and authorities, the Declaration of Chantel M. Schimming, Esq. ("Schimming Decl."), attached as **Exhibit A,** the Declaration of Christopher J. Hardin ("Hardin Decl."), attached as **Exhibit B** and such evidence/and oral argument as may be presented at the time of the hearing on this matter. SFR files the instant motion for temporary restraining order and preliminary injunction on an emergency basis to stop the wrongful sale set to take place on

- 1 -

**Wednesday, February 16, 2022, at 9:00 a.m.** SFR filed this instant motion in state court and secured a hearing date on February 8, 2022 before the case was removed to this Court. Counsel for SFR requested the sale be postponed so that the briefing could be completed in the regular course. After initially agreeing, counsel stated that they did not have authority to postpone the sale.

**MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

**I.   INTRODUCTION**

SFR has been embroiled in litigation over this Property for the better part of the last eight years. SFR was the highest bidder when the Property was auctioned at a public homeowner's association foreclosure sale. According to NRS 116.3116(2), the sale was believed to have extinguished the Deed of Trust. But, a hidden interest by the FHFA, deemed to be valid by the courts at the time of the foreclosure sale, has created a situation where the courts determined SFR obtained the Property subject to the Deed of Trust. In other words, the Deed of Trust remains an encumbrance on the Property.

Shellpoint is now trying to take the Property from SFR, however, it appears from the information provided on the first notice of default recorded on the Property that the Deed of Trust upon which Shellpoint is now trying to foreclose, has actually been terminated/discharged pursuant to NRS 106.240. The first notice of default indicated the borrower became delinquent on July 1, 2010. The recorded documents for this Property, along with common bank foreclosure procedures, reflect that on or around October 1, 2010, but in no event later than October 14, 2010, the loan for which the deed of trust secures was accelerated and made wholly due. At no time after this acceleration did Shellpoint, its predecessor(s) in interest, or any other entity on its behalf, decelerate the loan. As such, under NRS 106.240, as of October 1, 2010, the deed of trust became conclusively presumed discharged/terminated. While the most recent Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust ("NOD") indicates a different delinquency date than the one reflected in the first notice of default—November 1, 2011—there is no evidence to indicate the loan was ever decelerated. In the event the loan was decelerated, either through an agreement or by virtue of the recorded rescission, even using the

default date stated on the NOD, the loan was again accelerated sometime shortly after November 1, 2011 and has not been decelerated. Consequently, the Deed of Trust either has terminated pursuant to NRS 106.240 before the currently scheduled foreclosure sale.

Even if the Deed of Trust weren't presumptively discharged/terminated, Shellpoint has refused to follow Nevada Law to provide the information necessary for SFR to protect its Property. Specifically, Shellpoint and its agents are pushing forward with a non-judicial foreclosure sale despite providing inconsistent and/or inaccurate information in its response to SFR required under NRS 107.200 *et seq.*—information necessary for SFR to be able to verify and pay the amount required to discharge the debt and protect its Property from foreclosure. Additionally, the Promissory Note and Deed of Trust were split at origination and do not appear to have been reunited. Also, the copy of the Promissory Note provided by Shellpoint shows one undated blank endorsement and prior litigation on the Property raises questions as to what entity is the owner and/or holder of the Promissory Note. In sum, Shellpoint has not provided the documents necessary to establish Shellpoint actually has the authority to foreclose. In order to avoid irreparable injury, SFR files the instant motion for temporary restraining order and preliminary injunction on an emergency basis to stop the wrongful sale set to take place on **Wednesday, February 16, 2022, at 9:00 a.m.**

## II.   SUMMARY OF RELEVANT FACTS

| DATE | FACTS |
|---|---|
| November 21, 2007 | Grant, Bargain, Sale Deed, transferring the Property to Michael Weiss, a married man as his sole and separate property, was recorded as Instrument No.: 20071121-0000632.[1] |
| January 7, 2008 | A deed of trust that was purportedly executed by the Borrower/Grantor, and which identified Countrywide Bank, FSB ("Countrywide") as the Lender, and Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as a nominee for Countrywide and Countrywide's successors and assigns, as beneficiary, was recorded against the Property on January 7, 2008, as Instrument No.: 20080107-0001695 ("Deed of Trust").[2] |

---

[1] *See* Quitclaim Deed, attached to Schimming Decl. as **Exhibit A-1.**

[2] *See* Deed of Trust, attached to Schimming Decl. as **Exhibit A-2.**

| | |
|---|---|
| | Paragraph 22 of the Deed of Trust states that "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument… . The notice shall specify…that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property."[3] |
| July 1, 2010 | The Borrowers allegedly became delinquent on the Deed of Trust payments.[4]<br><br>Upon information and belief, on or around October 1, 2010, the loan was accelerated. At the latest, the loan was accelerated on October 14, 2010.<br><br>Upon information and belief, at no time within the ten years after acceleration, did Shellpoint or any other entity claiming an interest in the Deed of Trust, or their agents, take any clear and unequivocal affirmative act necessary to decelerate the loan. |
| October 14, 2010 | A Notice of Default/Election to Sell Under Deed of Trust ("First NOD") was recorded against the Property, by ReconTrust Company, N.A. ("ReconTrust"), as Trustee under the Deed of Trust as Instrument No.: 201010140002724.[5]<br><br>The First NOD stated regarding the loan that the Beneficiary did two things: First, the beneficiary "has declared and does hereby declare all sums secured thereby immediately due …"[6]. Second, the beneficiary elected to cause sale of the Property to satisfy the debt.[7] |
| October 18, 2010 | A document purporting to assign all beneficial interest under the Deed of Trust, together with the note(s), from MERS to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP ("BAC") was recorded against the Property as Instrument No.: 201010180003234.[8] |
| March 29, 2011 | ReconTrust recorded a Notice of Trustee's Sale ("First Notice of Sale") against the Property as Instrument No.: 201103290002425.[9] |

---

[3] *See id*., at p. 13 of 15.

[4] *See* Bank's Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust ("First NOD"), attached to Schimming Decl. as **Exhibit A-3.**

[5] *See id*.

[6] *Id.*

[7] *Id.*

[8] *See* Assignment of Deed of Trust, attached to Schimming Decl. as **Exhibit A-4.**

[9] *See* First Notice of Sale, attached to Schimming Decl. as **Exhibit A-5.**

- 4 -

| | |
|---|---|
| August 29, 2011 | ReconTrust recorded another Notice of Trustee's Sale ("Second Notice of Sale") against the Property as Instrument No.: 201108290002033.[10] |
| September 21, 2011 | ReconTrust recorded a Rescission of the First NOD as Instrument No.: 201109210003043.[11]<br><br>The Rescission intentionally did not rescind the acceleration of the loan. Rather, it specifically limited what was rescinded by stating that the Rescission "shall be deemed to be, only an election, without prejudice, not to cause a sale to be made …".[12] |
| February 15, 2012 | A second document purporting to assign all beneficial interest under the Deed of Trust, together with the note(s), from MERS, this time to Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP ("BANA") was recorded against the Property as Instrument No.: 201202150001843.[13] |
| September 5, 2013 | A document purporting to assign all beneficial interest under the Deed of Trust, together with the note(s), from Bank of America, N.A. to EverBank was recorded against the Property as Instrument No.: 201309050000106.[14] |
| September 11, 2013 | SFR acquired the Property by successfully bidding on the Property at a publicly-held foreclosure auction in accordance with NRS Chapter 116.[15] |
| September 17, 2013 | Trustee's Deed Upon Sale vesting title in SFR was recorded as Instrument No.: 201311180000217.[16] |
| February 2, 2015 | A document purporting to assign all beneficial interest under the Deed of Trust, from Everbank, as Successor by Merger to Everhome Mortgage Company, to Green Tree Servicing LLC was recorded against the Property as Instrument No.: 20150202-0001191.[17] |
| March 26, 2020 | A document purporting to assign the Deed of Trust from Ditech Financial LLC to New Residential Mortgage LLC was recorded against the Property as Instrument No.: 202003260000787.[18] |

---

[10] *See* Second Notice of Sale, attached to Schimming Decl. as **Exhibit A-6.**

[11] *See* Rescission, attached to Schimming Decl. as **Exhibit A-7.**

[12] *Id.*

[13] *See* Assignment of Deed of Trust, attached to Schimming Decl. as **Exhibit A-8.**

[14] *See* Assignment of Deed of Trust, attached to Schimming Decl. as **Exhibit A-9**.

[15] *See* Association Foreclosure Deed, attached to Schimming Decl., **Exhibit A-10**.

[16] *Id.*

[17] *See* Assignment of Deed of Trust, attached to Schimming Decl. as **Exhibit A-11.**

[18] *See* Assignment of Deed of Trust, attached to Schimming Decl. as **Exhibit A-12.**

| | |
|---|---|
| May 14, 2020 | A document purporting to assign the Deed of Trust from New Residential Mortgage LLC to NewRez LLC (Shellpoint) was recorded against the Property in the Official Records of the Clark County Recorder as Instrument No.: 202005140000635.[19] |
| September 30, 2021 | Quality Loan Service Corporation ("QLSC"), the current Trustee under the Deed of Trust, issued a Debt Validation Notice, which indicates the current creditor to whom the debt/loan is owed is Shellpoint.[20] |
| October 1, 2021 | A Notice of Breach and Default and of Election to Cause Sale of the Real Property under Deed of Trust ("Second NOD") was recorded against the Property, by Quality Loan Service Corporation ("QLSC") as the current Trustee under the Deed of Trust, as Instrument No.: 20211001-0002854.[21]<br><br>The Second NOD indicates a delinquency date of November 1, 2011.[22]<br><br>Even if the rescission and/or the proclaimed change in the default date served to decelerate the loan, all sums secured by the Deed of Trust were declared wholly due again shortly after that November 1, 2011 default date.<br><br>Given that the sale is currently scheduled for February 16, 2022, at no time within the ten years after the latest possible acceleration date will Shellpoint and/or its predecessors in interest, or any other entity claiming an interest in the Deed of Trust, or their agents, have taken any clear and unequivocal affirmative act necessary to decelerate the loan. |
| October 14, 2021 | Upon receipt of the NOD, SFR sent a request pursuant to NRS 107.200 through NRS 107.310 for statements and information, including a specific demand for a copy of the Promissory Note ("SFR's Demand"), to Shellpoint.[23]<br><br>The request was signed for by a Shellpoint representative on, October 15, 2021.[24] |

---

[19] *See* Assignment of Deed of Trust, attached to Schimming Decl. as **Exhibit A-13.**

[20] *See* Debt Validation Notice, attached to Schimming Decl. as **Exhibit A-14.**

[21] *See* Second NOD, attached to Schimming Decl. as **Exhibit A-15**

[22] *Id.*

[23] See Hardin Decl., Ex. C, at ¶9. *See also*, SFR's 107.200 *et seq*. letter, attached to Hardin Decl. as **Exhibit B-1**.

[24] *Id*. at ¶10.

- 6 -

| | |
|---|---|
| October 21, 2021- November 4, 2021 | SFR exchanged correspondence via email and left several messages with Benoit Roumier, the Shellpoint representative listed as the contact on the NOD, regarding confirmation of receipt and the status of any response.[25]<br><br>Mr. Roumier ultimately advised SFR he was not the proper contact to provide the statutorily requested information but indicated he would pass the request along and stress the urgency of having someone reach out to SFR regarding the request.[26] |
| November 5, 2021 | After the 21-day statutory deadline for a response to SFR's request pursuant to NRS 107.200 through NRS 107.310, Shellpoint still had not provided a response to SFR's demand.[27] |
| November 12, 2021 | SFR finally did receive a response to its request pursuant to NRS 107.200 through NRS 107.310, but the financial information provided in the response was inconsistent with the information stated on the provided copy of the Promissory Note.[28]<br>The Promissory Note also included only one endorsement—an undated blank endorsement from Countrywide.[29] |
| January 11, 2022 | QLSC recorded a Notice of Trustee's Sale against the Property as Instrument No.: 20220111-0001748, scheduling a foreclosure sale for **February 16, 2022** at **9:00 AM**. ("Notice of Sale").[30] |

### III. LEGAL ARGUMENT

#### A. Legal Standard

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions. A preliminary injunction may be issued if a moving party establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the moving parties' favor; and (4) that an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, SFR meets all four factors.

---

[25] *Id*. at ¶11-14.

[26] *Id*. at ¶14.

[27] *Id*. at ¶15

[28] *Id*. at ¶16. *See also*, Shellpoint's response to SFR's 107.200 *et seq*. letter, attached to Hardin Decl. as **Exhibit B-2**.

[29] *Id*.

[30] *See* Notice of Trustee's Sale, attached to Schimming Decl. as **Exhibit A-16.**

B. **SFR will Suffer Immediate, Irreparable Harm Without Injunctive Relief**

SFR is at risk of immediate and irreparable harm. **Nevada law is clear that the loss of real property rights generally constitutes irreparable harm because "real property and its attributes are considered unique."**[31] Where there is a strong probability of success on the merits, like here, the movant need only demonstrate that it will suffer a degree of hardship that outweighs the hardship of the defendant.[32] Nothing in Nevada law limits irreparable harm to the loss of real property to a principal residence. Further, SFR's ability to use the Property for its enjoyment or to otherwise use or sell the Property for profit will be immediate and irreparable. Any sale with further cloud title to the Property and will potentially add another third-party purchaser into the fray. In addition, SFR's business will be harmed.[33] Once the Property is sold, SFR will have lost the unique business asset—the Property itself. Because SFR will suffer immediate and substantial harm, as opposed to Shellpoint who will merely be restrained from conducting a sale on a certain date, on a property in which it may not actually have a security interest or authority to conduct the sale, the Court should grant SFR injunctive relief.

C. **SFR Has a Likelihood of Success on the Merits.**

 1. ***By Virtue of the Acceleration of the Loan, Pursuant to NRS 106.240, the Deed of Trust was Terminated/Discharged on or about June 1, 2020.***

NRS 106.240 provides in relevant part, a "deed of trust upon any real property, appearing

---

[31] *See Dixon v. Thatcher*, 103 Nev. 414, 416, 742 P.2d 1029, 1030 (1987) (holding that real property and its attributes are considered unique and loss of real property rights generally results in irreparable harm)(citing *Leonard v. Stoebling,* 102 Nev. 543, 728 P.2d 1358 (1986) and *Nevada Escrow Service, Inc. v. Crockett,* 91 Nev. 201, 533 P.2d 471 (1975) (denial of injunction to stop foreclosure reversed because legal remedy inadequate).

[32] *See Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993).

[33] The Nevada Supreme Court acknowledges this irreparable harm in *Sobol v. Capital Management Consultants*, 102 Nev. 444, 726 P.2d 335, 337 (1986).

> Without expressing an opinion on the merits of Sobol's complaint below, we conclude that Sobol has established a reasonable likelihood of prevailing on the merits. Furthermore, acts committed without just cause **which unreasonably interfere with a business or destroy its credit or profits, may do an irreparable injury and thus authorize and injunction.** *Guion v. Terra Marketing of Nev., Inc.*, 90 Nev. 237, 240, 523 P.2d 847, 848 (1974).

(Emphasis added).

of record…shall at the expiration of 10 years after the debt secured by the…deed of trust according to the terms thereof or any recorded written extension thereof become wholly due, terminate, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged."

In *Pro-Max*, the Nevada Supreme Court noted that the statute of repose found under NRS 106.240 "creates a conclusive presumption that a lien on real property is extinguished ten years after the debt becomes due," and ruled that "the conclusive presumption contained in NRS 106.240 clearly and unambiguously applies without limitation to all debts secured by deeds of trust on real property."[34] There are two time periods which govern the note and deed of trust. The note is governed by the contracts statute of limitations i.e. six years, and the deed of trust is governed by the statute of repose found in NRS 106.240, i.e. ten years.[35]

Typically, the statute of repose will not run until ten years from the maturity date of the note. However, if this maturity date is accelerated, then the statute of repose runs from the now, accelerated date because by accelerated the lender has fast-tracked the maturity date. In *Coit*, the Nevada Supreme Court recognized similar language found in the First and Second NOD in this case, as language which makes the entire note due and therefore changes the date upon which the statute of limitations runs.[36] The *Coit* Court in questioning the merits of a lender's statute of limitations argument stated "we question the merit of that argument in light of the March 2010 notice of default that declared the loan due in full."[37]

In the present case, the First NOD recorded on the Property indicates that the Borrowers became delinquent on July 1, 2010. Generally, notice of intent to accelerate is provided to the borrower via written correspondence shortly after default. The notice generally provides a period of 30 days for the borrower to cure the default to avoid acceleration. Upon information and belief,

---

[34] *Pro-Max Corp. v. Feenstra*, 117 Nev. 90, 94, 97, 16 P.3d 1074, 1076, 1079 (2001).

[35] *Facklam v. HSBC Bank*, 401 P.3 1068 (Nev. 2018).

[36] *First Am. Title Ins. Co. v. Coit*, 412 P.3d 1088 (Table), 2018 WL 1129810 (Nev. 2018) (unpublished).

[37] *Id.* citing *Cf. Clayton v. Gardner*, 107 Nev. 468, 470, 813 P.2d 997, 999 (1991) ("[W]here contract obligations are payable by installments, the limitations statute begins to run only with respect to each installment when due, unless the lender exercises his or her option to declare the entire note due.")

this process was followed in the present case, meaning the loan was accelerated on or around October 1, 2010. At the very latest, the loan was definitively accelerated by the time the First NOD was recorded on October 14, 2010. By accelerating the loan, the statute of repose in which to enforce the loan via the deed of trust began running on or near October 1, 2010, but at the very latest on October 14, 2010. The statute of repose then expired on or near October 1, 2020, or at the very latest on October 14, 2020. The only way Shellpoint, or its predecessor(s) in interest, could have tolled the running of the statute of repose was to decelerate the loan within the ten-year time-period, and the Nevada Supreme Court has held "[b]ecause an affirmative act is necessary to accelerate a mortgage, the same is needed to decelerate. Accordingly, a deceleration…must be… a clear and unequivocal act memorializing that deceleration."[38]

In the present case, it appears that at no time within the ten years after acceleration did Shellpoint and/or its predecessors in interest, or their agents, make a clear and unequivocal act necessary to decelerate the loan. While a rescission was recorded regarding the First NOD, intentionally did not rescind the acceleration of the loan. Rather, it specifically limited what was rescinded by stating that the Rescission "shall be deemed to be, only an election, without prejudice, not to cause a sale to be made …"[39]

By virtue of the acceleration, pursuant to NRS 106.240, the deed of trust was terminated/discharged in no instance later than October 14, 2020. There being no valid deed of trust upon which to foreclose, SFR will likely succeed on its claim for cancellation of instrument based on NRS 106.240. Therefore, this Court should grant SFR a preliminary injunction.

On October 1, 2021, a Second NOD was recorded indicating a default date of November 1, 2011, a date different than that set forth in the Fist NOD. To the extent this Court determines the loan was decelerated by some other action unknown to SFR—an action that may have caused the default date to change—the Deed of Trust is still subject to cancellation pursuant to NRS 106.240. The loan was again accelerated upon default of the Borrower, likely no later than

---

[38] *Cadle Co. II, Inc. v. Fountain*, 281 P.3d 1158 (2009) (rejecting voluntary dismissal of a judicial foreclosure as an action sufficient to decelerate a loan.)

[39] *See* Ex. A-7.

February 1, 2012, and, given the sale date of February 16, 2022, at no time within the ten years after acceleration will Shellpoint have made a clear and unequivocal act necessary to decelerate the loan. Therefore, even if the Court accepts the later of the default dates presented in the Second NOD, SFR will likely succeed on its claim for cancellation of instrument based on NRS 106.240.

### 2. *Shellpoint failed to comply and/or negligently complied with NRS 107.200 et seq. and cannot show it has authority to foreclose.*

SFR will likely succeed on the merits in this litigation regardless of whether or not the Deed of Trust was terminated pursuant to NRS 106.240 because SFR followed the proper procedure under NRS 107.200 *et. seq*. to request statements regarding the debt secured by the Deed of Trust and the amount necessary to discharge the debt, yet Shellpoint willfully failed to timely provide the complete statements as required by law. More importantly, when Shellpoint did finally provide a response, the information provided was inconsistent and/or inaccurate. Specifically, the financial information provided, such as the interest rate and the principal balance, were inconsistent with the information stated on the provided copy of the Promissory Note. Without the requested information, SFR is unable to verify the debt and pay the amount necessary to avoid foreclosure on its Property. Failure by Shellpoint to accurately provide this pertinent information will likely result in SFR's loss of the Property.

Additionally, SFR obtained a copy of the Promissory Note pursuant to NRS 107.260, but it is endorsed in blank and prior litigation on the Property implied the loan was owned and the note was held by someone other than Shellpoint. Simply put, there appears to be a large gap in the chain of title, calling into question Shellpoint's authority to foreclose. Without seeing a wet-ink signature copy of the Promissory Note is in Shellpoint's possession and having information provided regarding whether the loan is owned by Shellpoint or the Promissory Note is being held by Shellpoint on behalf of another entity, SFR is unable to determine proper ownership at all relevant times and thus, authority to foreclose. Moreover, the Promissory Note and Deed of Trust were split at origination and upon information and belief have never been reunited, further calling into question Shellpoint's authority to foreclose. Failure of the Shellpoint to establish the authority to foreclose will invalidate the NOD and Notice of Sale recorded on the Property and will result in

prohibition of the foreclosure sale.

D. **The Balance of Equities Weigh In SFR's Favor**

SFR should be granted injunctive relief because the Deed of Trust has been terminated and, even if that was not the case, SFR has taken all the steps necessary to obtain the statement regarding the debt secured by the deed of trust pursuant to NRS 107.200 and the statement of the amount necessary to discharge the debt pursuant to NRS 107.210. By all appearances, Shellpoint has failed to deliver complete and accurate information as required by Nevada law. Without said information, SFR is unable to verify and pay the amount necessary to avoid foreclosure on its Property.

At bottom, Shellpoint has failed to provide consistent and accurate financial information related to the loan—information necessary for SFR to protect its interest in the Property. For the reasons set forth herein, neither Shellpoint nor any of its predecessors have clean hands and thus are not entitled to equity from this Court. SFR's motion should be granted.

E. **An Injunction is in the Public Interest.**

An injunction is in the public interest. First, if the Property goes to foreclosure sale a third-party may unwittingly purchase the Property with a faulty belief that Shellpoint is well within its rights to sell the Property, only to be mired in litigation. Further, in SFR's experience, when banks have pushed forward with a foreclosure sale inappropriately, resources and time the parties must spend in litigation are multiplied and the families that live in the properties are thrown into a state of worry and distress. Public policy supports finality in non-judicial foreclosure sales—both association sales and bank foreclosure sale. Notwithstanding the possibility that the Deed of Trust here has been terminated, allowing Shellpoint to proceed to sale without requiring it to first establish its authority to foreclose and to provide the information requested by SFR will remove the opportunity of SFR, as successor in interest to the Grantor, to confirm and pay the amount necessary to discharge the debt. Further, doing so given Shellpoint's potential lack of authority to foreclose could result in an invalid sale. Additionally, there is no public policy that supports a bank non-judicially foreclosing without a valid security interest.

### F. A *De Minimis* Bond is Sufficient.

The express purpose of posting a security bond is to protect a party from damages incurred as a result of a wrongful injunction, not from damages existing before the injunction was issued.[40] Shellpoint is only entitled to damages, if any, caused by the delay in the foreclosure of the Deed of Trust. The time it will take to resolve this litigation is unlikely to negatively impact the amount Shellpoint could recover at a foreclosure sale. But given the likelihood of success on the merits, Shellpoint will likely never reach foreclosure. Thus, SFR requests that it only be required to post a *de minimis* bond of $100.

### IV. CONCLUSION

SFR asks this Court to issue a temporary restraining order and preliminary injunction to avoid irreparable damage. This Court should enter an order enjoining Shellpoint, its successors, assigns, and agents from continuing foreclosure proceedings during the pendency of this case. The Court should also enjoin Shellpoint and/or its agents from entering the Property or disturbing the tenants.

DATED this 8h day of February, 2022.

HANKS LAW GROUP

*/s/ Chantel M. Schimming*
KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
CHANTEL M. SCHIMMING, ESQ.
Nevada Bar No. 8886
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139-5974
*Attorneys for SFR Investments Pool 1, LLC*

---

[40] *See* FRCP 65; *Glens Falls Ins. v. First Nat'l Bank*, 83 Nev. 196, 427 P.2d 1 (1967).

**CERTIFICATE OF SERVICE**

I hereby certify that on the __8th__ day of February, 2022, pursuant to FRCP 5(b)(2)(E), I caused service of a true and correct copy of **SFR INVESTMENTS POOL 1, LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** to be made electronically via the U.S. District Court's Case Management/Electronic Case Files (CM/ECF) system upon the following parties at the e-mail addresses listed below:

Ariel E. Stern
Natalie Winslow
Paige Magaster
Akerman LLP
1635 VillageCenter Circle
Suite 200
Las Vegas, NV 89134
702-634-5000
Fax: 702-380-8572
Email: ariel.stern@akerman.com
Email: natalie.winslow@akerman.com
Email: paige.magaster@akerman.com

*Counsel for NewRez LLC doing business as Shellpoint Mortgage Servicing*

/s/ Candi Fay
An employee of HANKS LAW GROUP

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Declaration of Chantel Schimming |
| A-1 | Quitclaim Deed |
| A-2 | Deed of Trust |
| A-3 | First NOD |
| A-4 | Assignment of Deed of Trust |
| A-5 | First Notice of Sale |
| A-6 | Second Notice of Sale |
| A-7 | Rescission |
| A-8 | Assignment of Deed of Trust |
| A-9 | Assignment of Deed of Trust |
| A-10 | Association Foreclosure Deed |
| A-11 | Assignment of Deed of Trust |
| A-12 | Assignment of Deed of Trust |
| A-13 | Assignment of Deed of Trust |
| A-14 | Debt Validation Notice |
| A-15 | Second NOD |
| A-16 | Notice of Trustee's Sale |
| B | Declaration of Christopher Hardin |
| B-1 | NRS 107.200 *et seq* Letter |
| B-2 | Shellpoint Letter |