KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
E-mail: karen@hankslg.com
CHANTEL M. SCHIMMING, ESQ.
Nevada Bar No. 8886
E-mail: chantel@hankslg.com
HANKS LAW GROUP
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
Telephone: (702) 758-8434
*Attorneys for SFR Investments Pool 1, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SFR INVESTMENTS POOL 1, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>NEWREZ LLC, dba SHELLPOINT MORTGAGE SERVICING; DOES I through X, inclusive; and ROE BUSINESS ENTITIES I through X, inclusive,<br><br>Defendants.<br><br>NEWREZ LLC dba SHELLPOINT MORTGAGE SERVICING,<br><br>Counterclaimant,<br><br>vs.<br><br>SFR INVESTMENTS POOL 1, LLC; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>Counterdefendants. | Case No. 2:22-cv-0192-JAD-BNW<br><br>**MOTION TO DISMISS COUNTERCLAIMS** |

Counter-Defendant, SFR Investments Pool 1, LLC, ("SFR") hereby moves for dismissal of Counter-claimant Shellpoint Mortgage Servicing's ("Shellpoint") counterclaims.

- 1 -

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  STATEMENT OF RELEVANT FACTS

Shellpoint alleges six (6) counterclaims, five (5) of which must be dismissed. **First**, Shellpoint alleges a counterclaim for quiet title, but it is not premised on any independent controversy; it is just a repackage of Shellpoint's defense against SFR's claim that the deed of trust is not a valid encumbrance against the Property. **Second**, Shellpoint's intentional interference with a contract claim fails as a matter of law. Shellpoint does not allege a single act on the part of SFR in which SFR interfered with the borrower's performance under the contract. After all, according to the notice of default, the borrower has not performed since July 1, 2010. **Third**, Shellpoint's abuse of process likewise fails. SFR's motive in filing its action is solely to resolve a legal dispute. **Fourth**, Shellpoint's slander of title claim fails because SFR has not made a false or malicious statement regarding title to the property. **Fifth**, Shellpoint's claim for equitable lien is inapplicable as to SFR. This doctrine applies when a party wrongfully uses money belonging to another to buy real property.

### II.  LEGAL STANDARD

#### A.  Legal Standard for Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." The U.S. Supreme Court has clarified the applicable standard under FRCP 12(b)(6) is the "plausibility standard" i.e. when the plaintiff pleads factual content that allows the court to draw a reasonable inference defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* The facts actually pled must give rise to a plausible claim for relief. *Id.* As the *Iqbal* Court noted, "determining whether a complaint states a plausible claim for relief ... [is] a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678-679. But if all that can be inferred from the pled facts is the "mere possibility of misconduct," the dismissal is warranted. *Id.* In other words, the "factual allegations must be enough to raise a right

to relief above the speculative level." *Id.* at 1965. Finally, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 544 (2007).

### A. Shellpoint's Quiet Title Claim Fails

Shellpoint alleges a claim for quiet title but does not allege any independent basis by which to make such a claim.[1] Under NRS 40.010, there must be an adverse claim the party is asserting by which the Court must declare something. But here, Shellpoint offers no independent adverse claim against SFR; it merely asks this Court to reject SFR's claim that the deed of trust is not a valid lien against the Property. In that regard, Shellpoint's quiet title claim is just a re-packaging of its defense. There being no stand-alone quiet title claim which Shellpoint could assert against SFR, this Court should dismiss Shellpoint's counterclaim for quiet title.

### B. Shellpoint's Intentional Interference With Contract Claim Fails on its Face.

Under Nevada law, there are four elements to an intentional interference with contract claim, the third and fourth of which defeat Shellpoint's claim here, namely (1) defendant committed intentional acts intended or designed to disrupt the contractual relationship; and (2) there as an actual disruption of the contract. *Sutherland v. Gross,* 105 Nev. 192, 196, 772 P.2d 1287, 1290 (1989). In terms of the intentional acts designed to disrupt, this requires a showing that SFR intentionally interfered with the borrower's performance under the note and deed of trust. *See J.J. Industries, LLC v. Bennett*, 119 Nev. 269, 275, 71 P.3d 1264, 1268 (2003). In other words, it is not sufficient there is an act that causes an interference, there must be an intentional act aimed at inducing the third party to breach the contract with plaintiff. *Id.* citing *Ramona Manor Convalescent Hospital v. Care Enterprises*, 255 Cal.Rptr. 120 (Ct. App. 1986).

In the present case, Shellpoint only alleges SFR, by filing this action and seeking an injunction (one which the Court denied) has interfered with Shellpoint's remedies under the deed of trust i.e. its remedy to foreclose.[2] But this is not sufficient under Nevada law. Instead, Shellpoint

---

[1] *See* Counterclaim, ¶¶ 12-20.
[2] *See* Counterclaim at ¶¶ 26; 28.

must state facts which show SFR intentionally disrupted the borrower's payments/performance under the deed of trust. But Shellpoint could hardly plead this (nor does it) because the borrower stopped performing on July 1, 2010, long before SFR ever existed let alone had any interest in the Property. What is more, nothing by way of SFR's actions in filing this suit have created an actual disruption of the contract because SFR's filing of this suit did not cause the borrower to default back on July 1, 2010. Moreover, even ignoring Nevada law, this Court already denied SFR's injunction, so nothing stands in the way of Shellpoint exercising its remedy of foreclosure.

This Court must dismiss Shellpoint's intentional interference with contract claim.

### C. Shellpoint's Abuse of Process Claim Fails.

In Nevada, an abuse of process claim requires a showing that a defendant had an ulterior purpose in filing the action other than resolving a legal dispute and that defendant's use of process is not proper in the regular conduct of the proceedings. *LaMantia v. Redisi*, 118 Nev. 27, 30, 38 P.3d 877, 879 (2002). Examples where abuse of process was found include a suit brought against a doctor knowing there was no basis for the claim for the ulterior purpose of inducing settlement on another claim[3] and where a creditor attached property valued greatly in excess of the debt to coerce payment.[4] Here, Shellpoint alleges SFR's ulterior purposes include (1) to stop the foreclosure; and (2) to inflict financial injury on Shellpoint. But under Rule 11(b), by signing the complaint, SFR's counsel has certified the claims are warranted by existing law or for establishing new law and the factual contentions have evidentiary support or will likely have evidentiary support after an opportunity to engage in discovery.

Nevertheless, this Court already denied SFR's request for an injunction, so the alleged ulterior motive to stop the foreclosure cannot support Shellpoint's claim. Additionally, what does SFR gain by making Shellpoint incur fees when it too must incur fees and costs to litigate this matter. Thus, neither of the alleged ulterior motives pass muster.

While SFR appreciates Shellpoint disagrees on the issue of NRS 106.240, the fact remains there exists no published law in Nevada on the issue of whether the language in the recission was

---

[3] *Bull v. McCuskey*, 96 Nev. 706, 615 P.2d 957 (1980).
[4] *Nevada Credit Rating Bureau, Inc. v. Williams*, 88 Nev. 601, 503 P.2d 9 (1972).

sufficient to decelerate the loan or even if it did, whether that language was sufficient to address a prior acceleration via letter. Thus, on this issue SFR's complaint is warranted by existing law or for establishing new law. Additionally, SFR has learned through discovery in other matters, Bank of America typically sends acceleration letters 62 days from date of default. SFR has seen first-hand these letters and the letters state the loan will be accelerated if the borrower fails to bring the loan current on a date certain. Even Shellpoint has admitted these letters exist during trial testimony before this very Court. What is more, Shellpoint has testified as part of its onboarding process it always asks whether the loan is accelerated. In light of all of this, SFR will likely obtain the further evidentiary support for its NRS 106.240 argument in this matter.

As for SFR's allegations that Shellpoint lacks the authority to foreclose, it is undisputed the chain of assignments are not clean. While Shellpoint wants to swat this away with an allegation that this or that assignment was just an error, the fact remains the chain is questionable making SFR's claim meritorious. Finally, NRS 107.200 and 210 required Shellpoint to respond to SFR's requests within 21-days. Shellpoint failed to do this. It took SFR continually asking for the information for Shellpoint to finally respond, only to receive information that did not comport with the note. SFR only has only one goal in mind in bringing its suit: to resolve legitimate legal disputes. Thus, Shellpoint's claim for abuse of process must be dismissed.

### D. Shellpoint's Claim for Slander of Title Fails.

A slander of title claim requires the showing of a false and malicious communication disparaging **plaintiff's title in land**. The biggest flaw with Shellpoint's claim is it holds no title to the Property. The term "title" refers to fee simple ownership. *See Levinson v. Eighth Judicial Dist. Court*, 109 Nev. 747, 751, 857 P.2d 18, 21 (1993). Shellpoint claims an interest in a lien recorded against the Property, but it has no fee simple title to the Property. SFR is the title owner and therefore it cannot slander its own title. In fact, Shellpoint alleges SFR "disparaged Shellpoint's interest,"[5] but there is no such claim in Nevada. The claim is slander of title, not slander of interest. Thus, Shellpoint's claim for slander of title must be dismissed.

---

[5] *See* Counterclaim at ¶ 37.

### E. Shellpoint's Claim for Equitable Lien Fails.

As an alternative remedy to its quiet title claim, Shellpoint seeks an equitable lien. SFR can only interpret this to mean it is asking, should this Court deem the deed of trust invalid under NRS 106.240, the Court should declare an equitable lien against the Property, in the same amount the deed of trust secured.[6] This claim fails because an equitable lien does not apply in this circumstance. Under Nevada law, an equitable lien is only appropriate where a party keeps money belonging to another to purchase real property. *Maki v. Chong*, 119 Nev. 390, 75 P.3d 376 (2003). As the *Maki* Court noted, the doctrine exists to address a situation where "one who has purchased real property with funds of another, under circumstances which ordinarily would entitle such other person to enforce a constructive trust in, or an equitable lien against, the property…" *Id.* quoting *Remedy of One Whose Money Is Fraudulently Used in the Purchase or Improvement of Real Property*, 43 A.L.R. 1415, 1446 (1926). In other words, it is a doctrine that protects a creditor when a debtor fraudulently obtains the money, and then uses that money to purchase real property. *Id.* citing *Webster v. Rodrick*, 394 P.2d 689, 691 (Wash. 1964).

Of course, these facts do not exist, nor does Shellpoint allege them. Instead, Shellpoint makes various allegations about SFR benefiting from the fact Shellpoint had to litigate the validity of the HOA foreclosure sale and COVID stalled foreclosure. None of the allegations go toward an equitable lien. Therefore, this Court should dismiss Shellpoint's equitable lien claim.

…

---

[6] *See* Counterclaim at ¶ 63.

- 6 -

### III. CONCLUSION

SFR asks this Court to dismiss the following counterclaims: quiet title, intentional interference with a contract, abuse of process, slander of title and equitable lien under FRCP 12(b)(6).

DATED this 23rd day of March, 2022.

        **HANKS LAW GROUP**

        */s/ Karen L. Hanks*
        KAREN L. HANKS, ESQ.
        Nevada Bar No. 9578
        CHANTEL M. SCHIMMING, ESQ.
        Nevada Bar No. 8886
        7625 Dean Martin Drive, Suite 110
        Las Vegas, Nevada 89139
        *Attorneys for SFR Investments Pool 1, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of March, 2022, pursuant to FRCP 5(b)(2)(E), I caused service of a true and correct copy of the foregoing **MOTION TO DISMISS COUNTERCLAIMS** to be made electronically via the U.S. District Court's Case Management/Electronic Case Files (CM/ECF) system upon the following parties at the e-mail addresses listed below:

Ariel E. Stern, Esq.
Natalie L. Winslow, Esq.
Paige L. Magaster, Esq.
Akerman, LLP
1635 Village Center Circle, Suite 200
Las Vegas, NV 89134
Email: ariel.stern@akerman.com
Email: natalie.winslow@akerman.com
Email: paige.magaster@akerman.com
*Attorneys for NewRez, LLC dba Shellpoint Mortgage Servicing*

/s/ Candi Fay
an employee of Hanks Law Group