UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SFR Investments Pool 1, LLC,<br><br>    Plaintiff<br>v.<br><br>Newrez LLC dba Shellpoint Mortgage Servicing; et al.,<br><br>    Defendants | Case No.: 2:22-cv-00192-JAD-BNW<br><br>**Order Granting Motion for Judgment on SFR's NRS 106.240 Claim and Granting in Part SFR's Motion to Dismiss Shellpoint's Counterclaims**<br><br>[ECF Nos. 18, 40] |

    This case is a remnant of Nevada's foreclosure crisis in which real-estate investors snapped up homes for pennies on the dollar after the owners defaulted on their homeowner-association (HOA) assessments.  Plaintiff SFR Investments Pool 1, LLC, did just that in September 2013 when it bought this home at 2993 Via Della Amore in Henderson, Nevada, for $18,000 at an HOA foreclosure sale.[1]  The home had been purchased eight years earlier with a $356,000 mortgage secured by a deed of trust.[2]  More than six years of state-court quiet-title litigation ended in the determination that SFR bought the property subject to that deed of trust.[3]  But when NewRez LLC dba Shellpoint Mortgage Servicing took steps to foreclose on that long-unpaid mortgage last winter, SFR filed this wrongful-foreclosure action.  It theorizes, in part, that the deed of trust was extinguished by operation of Nevada Revised Statute (NRS) § 106.240, which conclusively presumes that a lien is automatically extinguished ten years after the debt it secures becomes wholly due.  Shellpoint responded with a host of counterclaims.

---

[1] ECF No. 40-7 (HOA trustee's deed upon sale).

[2] ECF No. 40-1 (deed of trust).

[3] *See* ECF Nos. 40-8 (findings of fact, conclusions of law, and judgment) & 40-9 (appeal dismissal).

Shellpoint moves for judgment on SFR's NRS 106.240 claim under Federal Rule of Civil Procedure (FRCP) 12(c), and SFR moves to dismiss all of Shellpoint's counterclaims under FRCP 12(b)(6). Because I find that Shellpoint is entitled to judgment as a matter of law on SFR's NRS 106.240 claim based on recent Nevada law, I grant its motion. I also find that Shellpoint's slander-of-title claim fails because Shellpoint is not a titleholder here, so I dismiss that counterclaim but deny the remainder of SFR's motion to dismiss.

## Discussion

**I.  Shellpoint is entitled to judgment on SFR's NRS 106.240 claim [ECF No. 40].**

SFR's second claim for relief is entitled "Cancellation of Written Instrument—Deed of Trust."[4] In it, SFR alleges that "[u]pon information and belief, all sums secured by the Deed of Trust were declared wholly due on around October 1, 2010, or at the latest when the [f]irst [notice of default] was recorded on October 14, 2010."[5] SFR theorizes that, because NRS 106.240 provides that a lien created by a mortgage "shall be conclusively presumed . . . discharged" ten years after the debt secured by the mortgage "become[s] wholly due,"[6] the deed of trust for this property "was terminated/discharged on or before October 1, 2020, or at the latest on October 14, 2020," and SFR "is entitled to cancellation of the Deed of Trust."[7]

Shellpoint moves for judgment on this claim under FRCP 12(c).[8] "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute and the moving

---

[4] ECF No. 1-1 at 9.
[5] *Id*. at ¶ 65.
[6] Nev. Rev. Stat. § 106.240.
[7] ECF No. 1-1 at ¶¶ 69–70.
[8] ECF No. 40.

2

party is entitled to judgment as a matter of law."[9] When deciding such a motion, the court considers the facts set forth in the pleading and "facts that are contained in materials of which the court may take judicial notice."[10]

SFR's allegations, coupled with the law interpreting NRS 106.240, entitle Shellpoint to judgment as a matter of law on SFR's second claim for relief. Two theories undergird this claim. The primary theory is that the notice of default, recorded on October 14, 2010, accelerated the debt and triggered NRS 106.240's ten-year clock. But that notice of default was rescinded in 2011, and I take judicial notice of that publicly recorded rescission.[11] As SFR well knows, the Nevada Supreme Court held in *SFR Investments Pool 1, LLC v. U.S. Bank* (known as the "*Gotera*" case) that a rescission like this one decelerates the loan for purposes of NRS 106.240.[12] Because the October 14, 2010, notice of default was rescinded the following year, stopping the ten-year clock, that recorded notice cannot form the basis for SFR's NRS 106.240 claim.[13]

SFR's secondary theory—that the mortgage debt became wholly due "on around October 1, 2010" because the bank likely sent a letter around that date, warning that the loan would be accelerated if the default was not cured[14]—similarly fails to support this claim. The Ninth

---

[9] *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (cleaned up).

[10] *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (cleaned up).

[11] ECF No. 40-4 (recission of election to declare default); NRS 47.130 et seq.; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (court may take judicial notice of matters of public record).

[12] *SFR Investments Pool 1, LLC v. U.S. Bank*, 507 P.3d 194, 197–98 (Nev. 2022).

[13] For purposes of this argument, I assume without deciding that the notice of default rendered the debt "wholly due."

[14] ECF No. 49 at 2–3.

Circuit has held that an unrecorded notice cannot render a debt wholly due,[15] so such a letter could not have triggered NRS 106.240. Even if it could, the 2011 rescission decelerated the debt that would have been the subject of that letter, so none of the default communications that form the basis for this claim could have given rise to NRS 106.240's conclusive presumption. SFR's second claim for relief thus fails as a matter of law, so I grant Shellpoint's motion for judgment on the pleadings for this claim.

**II.   SFR's motion to dismiss Shellpoint's counterclaims [ECF No. 18]**

Shellpoint asserts six counterclaims against SFR: quiet title, tortious interference with contractual relations, abuse of process, slander of title, an action for the turnover of rents under NRS chapter 107A, and equitable lien.[16] SFR moves to dismiss all but the 107A claim.[17]

**A.   *Quiet title***

SFR argues that Shellpoint's quiet-title claim fails because there are no adverse rights being asserted and for which a declaration could be made.[18] But that characterization grossly understates SFR's position in this litigation. SFR is taking the position that it owns this property free and clear of the deed of trust "by virtue of" the NRS 106.240 debt discharge, and it seeks to bar Shellpoint's ability to foreclose.[19] Shellpoint takes the contrary position—that the state-court action ended in the legal determination that the deed of trust remains enforceable and that SFR

---

[15] *Daisy Tr. v. Fed. Nat'l Mortg. Ass'n*, 2022 WL 874634, at *2 (9th Cir. Mar. 24, 2022) ("[W]hether Fannie Mae issued an unrecorded acceleration notice in 2009 is legally irrelevant. Such a notice could not have rendered its debt 'wholly due.'").

[16] ECF No. 17 (amended counterclaim).

[17] ECF No. 18.

[18] *Id*. at 3.

[19] ECF No. 1-1 at ¶¶ 69–71.

purchased the property subject to that interest.[20]  SFR's own quiet-title claim even recognizes that "Shellpoint may claim an adverse interest in the Property through the Deed of Trust" and that "this Court has the power and authority to declare SFR's rights and interests in the Property and to resolve Shellpoint's adverse claims in the Property."[21]  These allegations make it undeniable that there are adverse claims that are ripe for judicial resolution.  So SFR's request to dismiss Shellpoint's quiet-title claim is denied.

### B.   Intentional interference

In its second counterclaim, Shellpoint alleges that SFR's "refusal to satisfy the amounts owed under the deed of trust" and its "pursuit of an injunction" to stop Shellpoint's foreclosure efforts "are intentional and designed to disrupt the contractual relationship between the borrower and Shellpoint," and they have indeed accomplished that goal.[22]  SFR contends that Shellpoint's intentional-interference-with-contract claim fails because "there must be an intentional act aimed at inducing the third party to breach the contract" to state such a claim.[23]  But the cases on which SFR relies imply that this tort is not so narrow.  When outlining the elements of this claim in *Sutherland v. Gross*,[24] the Supreme Court of Nevada relied on the California Court of Appeal's opinion in *Ramona Manor Convalescent Hospital v. Care Enterprises*.[25]  The *Ramona Manor* court held that liability could be found when a lessee "intentionally retained possession rather than surrendering" leased premises to the landlord because "such action would frustrate the

---

[20] ECF No. 17 at 18.
[21] ECF No. 1-1 at ¶¶73–74.
[22] ECF No. 17 at 19.
[23] ECF No. 18 at 3.
[24] *Sutherland v. Gross*, 772 P.2d 1287 (Nev. 1989).
[25] *Ramona Manor Convalescent Hosp. v. Care Enter.*, 177 Cal. App. 3d 1120 (1986).

legitimate contractual expectations of" the new lessee.[26]  It also noted that, "[i]n recent years, the tort of 'inducing breach of contract' has expanded to permit liability where the defendant does not literally induce a breach of contract, but makes plaintiff's performance of the contract 'more expensive or burdensome' or interferes with the formation of a prospective economic relationship."[27]  This language suggests that the disruption-of-the-contractual-relationship element can be satisfied when the tortfeasor's acts frustrate contractual expectations and not only when those acts induce a contractual breach.  Because Shellpoint has alleged that SFR's actions have frustrated its contractual right to foreclose, I find that Shellpoint has sufficiently pled this claim to survive dismissal.

### C. Abuse of process

For its third cause of action, Shellpoint claims that SFR's filing and maintenance of this lawsuit and the tactics and arguments that it is pursuing here are an abuse of the judicial process.[28]  SFR moves to dismiss this claim, arguing that it fails because SFR's counsel's signature on the complaint certifies that "the claims are warranted," and SFR promises that its only goal is "to resolve legitimate legal disputes."[29]  SFR's insistence that its motives are pure is not a valid basis to dismiss this claim.  Shellpoint has pled sufficient facts to state a plausible abuse-of-process claim, and this court must take those facts as true when evaluating this Rule 12(b)(6) motion.[30]  That is enough at this point for this claim to proceed.

---

[26] *Ramona Manor*, 177 Cal. App. 3d at 1133.

[27] *Id*. (cleaned up and internal citations omitted).

[28] ECF No. 17 at 19–20.

[29] ECF No. 18 at 5.

[30] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### D. *Slander of title*

The same cannot be said of Shellpoint's slander-of-title claim, however. Under Nevada law, a slander-of-title claim requires (1) false and malicious communications, (2) disparaging to one's title in land, (3) causing special damages.[31] Although Shellpoint claims an interest in the Via Della Amore property, that interest is a lien. Shellpoint does not hold title, and it points to no case in which the Nevada Supreme Court recognized that a slander-of-title claim can be brought by a mere lienholder. So I grant SFR's motion to dismiss this claim and I do so without leave to amend because amendment would be futile.

#### E. *Equitable lien*

Finally, SFR moves to dismiss Shellpoint's equitable-lien claim, pled in the alternative should its quiet-title claim fail. Shellpoint's theory for this claim is that "SFR has benefitted from the deed of trust encumbering the property" and the delays caused by the prior litigation and COVID, so if the deed of trust is deemed extinguished, it should have "a first-priority equitable lien in" its favor.[32] SFR argues that this claim fails because "an equitable lien is only appropriate where a party keeps money belonging to another to purchase real property"—and because Shellpoint does not allege that SFR bought this property with someone else's funds, the claim fails as a matter of law.[33] But *Maki v. Chong*,[34] on which SFR relies for this principle, does not confine the court's equitable powers to such narrow circumstances, and other equitable-lien cases from the Supreme Court of Nevada suggest that such liens may arise from situations

---

[31] *See Higgins v. Higgins*, 744 P.2d 530, 531 (Nev. 1987) (citations omitted).
[32] ECF No. 17 at 23
[33] ECF No. 18 at 6.
[34] *Maki v. Chong*, 75 P.3d 376 (Nev. 2003).

7

unrelated to the wrongful use of funds to purchase property.[35] So it does not appear that Nevada law limits equitable liens only to situations in which the defendant uses the plaintiff's funds to buy real property, and I deny the motion to dismiss this claim.

### Conclusion

IT IS THEREFORE ORDERED that SFR Investments Pool 1, LLC's motion to dismiss counterclaims **[ECF No. 18] is GRANTED in part: NewRez LLC dba Shellpoint Mortgage Servicing's slander-of-title counterclaim is dismissed**, but the motion is denied as to all other claims.

IT IS FURTHER ORDERED that Shellpoint Mortgage Servicing's motion for judgment on the pleadings **[ECF No. 40] is GRANTED: Shellpoint is entitled to judgment in its favor on SFR's NRS 106.240 claim (its second claim for relief entitled Cancellation of Written Instrument–Deed of Trust).** So this case proceeds without SFR's NRS 106.240 claim.

_____
U.S. District Judge Jennifer A. Dorsey
November 4, 2022

---

[35] *See Com. Credit Corp. v. Matthews*, 365 P.2d 303, 307–08 (Nev. 1961); *Gralnick v. Rowe-Gralnick*, 2016 WL 2851883, at *1 (Nev. 2016) (unpublished).